UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>JACK AND LYMOR WASSERMAN,<br>DEBTORS.<br><br>―――――――――――――――――<br><br>IRA BODENSTEIN,<br>UNITED STATES TRUSTEE<br>PLAINTIFF,<br><br>vs.<br><br>JACK AND LYMOR WASSERMAN,<br>DEFENDANTS. | CHAPTER 7 PROCEEDING<br><br>CASE NO. 04 B 11045<br><br>ADVERSARY NO. 04 A 04496 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Adversary Proceeding relates to the Chapter 7 bankruptcy case of Jack and Lymor Wasserman ("Debtors" or "Defendants"). The United States Trustee ("U.S. Trustee") filed this Adversary Complaint objecting to Defendants/Debtors' discharge under 11 U.S.C. § 727. The U.S. Trustee contends that Debtors failed to maintain and produce necessary documents and records regarding their income and unsecured claims of at least $313,222.26. He also argues that the Debtors have failed to explain their loss and deficiency of assets. The Debtors contend that all of their business records were seized and disposed on two separate occasions by different landlords, and for that reason they are unable to produce records or account for assets after filing in bankruptcy.

Following trial the Court now makes and enters the following Findings of Fact and Conclusions of Law, pursuant to which judgment will separately enter denying each Debtor a bankruptcy discharge under 11 U.S.C. §§ 727(a)(3) and (a)(5).

## FINDINGS OF FACT

1. The Defendants filed their voluntary petition for relief under Chapter 7 of the Bankruptcy Code on March 19, 2004.

2. The Defendants list no holdings of real property on Schedule A and $6,550 in personal property on Schedule B, all of which is claimed as exempt.

3. On Schedule E, the Defendants list the Illinois Department of Revenue and the Internal Revenue Service as creditors holding unsecured priority claims for tax years 1999 through 2003, and the amount of each claim is listed as "Unknown."

4. According to Schedule B, Debtors have not filed a personal tax return since 1998 and have never filed corporate tax returns for any of their businesses.

5. Defendants' Schedule F lists $313,222.26 in unsecured nonpriority claims, as well as 49 creditors with claims of unknown amounts.

6. On May 6, 2004, the U.S. Trustee requested the following documentation from the Defendants:

    a. For each of the credit card accounts listed in the Defendants' schedules, copies of the monthly billing statements for the two-year period prior to filing, beginning with the statements for March 1, 2002.

    b. All other documents, including statements, credit applications, correspondence, bank records, original wire transfer requests, personal ledgers, personal accountings, or notes that are related to credit card accounts and/or bank statements.

   c. Copies of any correspondence between the Defendants and the IRS and/or the Illinois Department of Revenue.

   d. For all personal or business checking, savings, or other banking accounts that the Defendants have had in the past two years, copies of all monthly bank statements, check registers, and ledgers, beginning with March 1, 2002, through the date of filing.

   e. Copies of all documentation relating to any loans personally guaranteed by the Defendants.

   f. Copies of documentation regarding each judgment listed in Question 4 of the debtors' Statement of Financial Affairs.

   g. Copies of all documentation relating to each of the former businesses listed in Question 18 of the debtors' Statement of Financial Affairs, including but not limited to, LLC formation documents, articles of incorporation, business ledgers, client lists, inventory lists, invoices, and any other documentation relating to Te Avone, Talk of the Town Hospitality, and Full Cup Enterprises.

7. However, the only documents provided were:

   a. Personal bank statements from August 2003 to March 2004;

   b. Eight computer printouts (not account statements) that appear to relate to one or more of the Debtors' credit card accounts;

   c. Copies of pleadings and exhibits from certain state court actions against the Debtors;

   d. A copy of a Settlement Agreement and Release between a Mr. Scott Heiman and the Debtors;

   e. Twenty-three e-mails containing a total of 294 attachments, most of which were food orders placed to or income from Mr. Wasserman's catering business, Te'Avone;

   f. One letter from the IRS;

   g. An executive summary from Full Cup Enterprises; and

   h. Defendant Exhibits 2A through 2H.

8. Other than the documents referenced in ¶ 7 hereof, no documents were provided regarding the Debtors income for their businesses named Full Cup Enterprises or Talk of the Town, and only minimal documentation was provided for their business called Te'Avone. Nothing was provided to account for the Debtors' substantial business startup funds. Only statements from two credit card accounts covering the years 1996 to 2002 were provided, nor were any credit card statements provided for those accounts except Defendants Exhibits 1A and 1B. In addition, the documentation which was provided did not demonstrate how the Debtors incurred unsecured debt of over $313,000, nor did it explain the disposition of monies obtained and purchases totaling this substantial amount. The Debtors' only explanation as to why they have not provided books and records is that as a result of nonpayment of rent and two subsequent eviction proceedings, all of their business records from two different businesses were seized and eventually disposed of by landlords on two difference occasions. (Answer at 8). The Debtors also assert that they have no way of reconstructing the lost records and have never had sufficient funds available to attempt restoration of their records through assistance of professionals. Id.

9. On May 13, 2005, the U.S. Trustee issued discovery requests to the Debtors, including 29 Requests to Admit under Fed. R. Civ. P. 36 [under applicable law by Rule 7036 Fed.R.Bankr.P.], 10 interrogatories under Fed. R. Civ. P. 33 [Rule 7033 Fed.R.Bankr.P.], and five requests for production of documents under Fed.R.Civ.P. 34 [Rule 7034 Fed.R.Bankr.P.].[1] Although a response was due to each request within 30 days, because the Debtors' attorney

---

[1] The U.S. Trustee served the discovery request via U.S. Mail, First Class on Debtors former counsel on May 13, 2005. (Trial Tr., 94, Aug. 15, 2005). The Debtors were sent a letter dated July 5, 2005 reminding them of the Request to Admit. (Trial Tr., 96, Aug. 15, 2005).

4

withdrew, they were given an additional 17 days to respond. Despite this extension, the Debtors failed to respond to the discovery requests. Therefore, pursuant to Fed.R.Civ.P. 36(a), each Request to Admit was therefore deemed admitted for the purposes of this Adversary Proceeding. Certain admissions have been supplemented to reflect evidence presented at trial, and the further Findings below come from the Requests thereby admitted and trial evidence.

10. Jack Wasserman has taken college classes in Accounting, Math and Business, ran a check-cashing store in New York for about two years and has started three businesses. Lymor Wasserman has a B.A. in Accounting and has professional accounting experience.

11. Full Cup Enterprises LLC d/b/a Urban Blend ("Full Cup") was a business operated by Jack Wasserman from February 1997 to July 1999. In starting Full Cup Defendant, Jack Wasserman, sold 42 units of the LLC for $5,000 each. In addition, Full Cup operated for about a year and earned an average gross monthly income of about $25,000 to $30,000.

12. The Debtors have provided no documentation regarding the disposition of the $210,000 received from the sale of the 42 units of the LLC or regarding the income or expenses of the company.

13. The Debtors have never filed a business tax return of any kind for Full Cup.

14. Talk of the Town Hospitality LLC ("Talk of the Town") was a restaurant operated by the Debtors from September 1999 to February 2002. It was owned by Defendant Lymor Wasserman.

15. In 1999 the Debtors received a loan of $50,000 from Scott Heiman and a loan of $114,000 from Bridgeview Bank for the purpose of starting Talk of the Town. In addition, Talk of the Town was open for about 18 months and had gross monthly income of up to $50,000.

16. The Debtors have provided no documents regarding the disposition of the funds they received from Scott Heiman or Bridgeview Bank or regarding the income or expenses of Talk of the Town.

17. The Debtors have never filed a business tax return of any kind for Talk of the Town.

18. Te'Avone LLC ("Te'Avone"), a catering business, was a limited liability company operated by the Debtors from November 2001 to June 2003.

19. Defendant Jack Wasserman used computer programs Quickbooks and Excel to maintain the books and records for Te'Avone, but produced few records from those systems.

20. Te'Avone earned gross income of $90,000 during one month of its operation, had an average gross monthly income of about $40,000 and an average monthly profit of about $4,000.

21. The Debtors have provided no documents regarding disposition of the income earned from Te'Avone.

22. The Debtors have never filed a business tax return of any kind for Te'Avone.

23. The Debtors have not provided documentation showing what was purchased for the $59,294.73 in credit card charges listed on the Debtors' Schedule F.

## CONCLUSIONS OF LAW

### Jurisdiction

Jurisdiction lies under 28 U.S.C. § 1334 and under District Court's Internal Operating Procedure 15(a). Determination on an objection to discharge is a core proceeding under 28 U.S.C. § 157 (b)(2)(J). Venue is proper under 28 U.S.C. § 1409.

## Discharge Standards

The U.S. Trustee has the burden of proof and must prove every element of his objections to discharge by a preponderance of evidence. In re Scott, 172 F.3d 959, 966-67 (7th Cir. 1999); In re Martin, 141 B.R. 986, 992 (Bankr. N.D. Ill. 1992). A Chapter 7 discharge "recognizes the Congressional intent of providing the bankrupt with a 'fresh start,'" [and] 11 U.S.C. § 727(a) of the Bankruptcy Code must be construed strictly against the objecting [party] and liberally in favor of the debtor." In re Costello, 299 B.R. 882, 894 (Bankr. N.D. Ill. 2003). However, violation by the debtor of any of the provisions of 11 U.S.C. § 727 completely bars a debtor's discharge. Id.

## 11 U.S.C. § 727(a)(3)

Section 727(a)(3) provides that a debtor shall be granted a discharge unless the debtor fails to keep or preserve books and records from which the debtor's financial condition may be ascertained. 11 U.S.C. § 727(a)(3). The purpose of § 727(a)(3) is to make "a privilege of discharge dependent on a true presentation of the debtor's financial affairs.'" In re Self, 325 B.R. 224, 240 (Bankr. N.D. Ill. 2005) (citing In re Scott, 172 F.3d 959, 969 (7th Cir. 1999)).

The language of § 727(a)(3) "places an affirmative duty on the debtor to create books and records accurately documenting his financial affairs." In re Self, 325 B.R. at 240; In re Hansen, 325 B.R. 746, 761 (Bankr. N.D. Ill. 2005) (noting debtors' "obligation to maintain, preserve, and produce records of their financial affairs"); In re Costello, 299 B.R. at 897 (noting "affirmative duty to create books and records" imposed on debtors by § 727(a)(3)). In fact, "[s]ubstantially accurate and complete records of a debtor's financial affairs is a prerequisite to discharge in bankruptcy." In re Martin, 141 B.R. at 995.

7

The party alleging that a debtor has breached this affirmative duty "has the initial burden of proving that the books and records are inadequate," and thereafter "the burden of production shifts to the debtor to justify the lack of adequate records under the particular circumstances." In re Costello, 299 B.R. at 897; In re Self, 325 B.R. at 241.

Section 727(a)(3) "insures that creditors receive adequate information so that they can 'ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present.'" In re Costello, 299 B.R. at 897 (citing In re Juzwiak, 89 F.3d 424, 427 (7th Cir. 1996) (internal citations omitted)). "The determination of what constitutes a reasonable period prior to filing must be measured on a case-by-case basis, taking into account all of the circumstances of the case." In re Self, 325 B.R. at 241. Whether a debtor's books and records are complete and accurate is to be determined on a case-by-case basis, considering the size and complexity of the debtor's financial situation, as well as "the sophistication of the debtor, his educational background, his business experience and acumen, and his personal financial structure." In re Self, 325 B.R. at 241; In re Costello, 299 B.R. at 897.

Section 727(a)(3) "does not merely require that the debtor not lose any records; it mandates a denial of discharge for the 'failure to act,' unless such failure to act is justifiable." In re Self, 325 B.R. at 241. Mere testimony from the debtors regarding their version of their financial transactions is insufficient to satisfy the duty imposed by § 727(a)(3), and neither the U.S. Trustee nor the court is required to "reconstruct a debtor's financial situation or take a debtor's word for his financial dealings." In re Hansen, 325 B.R. at 761; In re Carlson, 231 B.R. 640, 655 (Bankr. N.D. Ill. 1999) (holding that "[c]reditors and the Trustee are not required to

8

accept Debtor's oral recitations or recollections of his transactions; rather, to qualify for a discharge in bankruptcy, a debtor is required to keep and produce written documentation of all such transactions.").

The Debtors, one with extensive business experience and one with an accounting degree and accounting experience, have failed to produce books and records from which their financial condition may be ascertained. They have not produced any documentation regarding the disposition of the $210,000 they received in starting Full Cup and nothing regarding the income and expenses of the business. Likewise, the Debtors have provided no documentation regarding the $164,000 they received in starting Talk of the Town and nothing regarding the income and expenses of the business.

The Debtors have also provided very little documentation regarding the income and expenses of Te'Avone. Despite the fact that much of the Debtors' $313,222.26 in acknowledged unsecured debt[2] appears to relate to these three failed business, their books and records are not only insufficient but are mostly non-existent. The Debtors list $59,294.73 in credit card debt, but have provided insufficient credit card statements explaining the charges for that debt. They have provided only minimal bank statements and no check registers. In addition, neither of the Debtors have filed any tax returns for the past six years (Trial Tr., 72, Aug. 15, 2005), making it impossible to determine even the most elemental aspects of their financial condition.

The Debtors' debt came from a variety of sources. Mrs. Wasserman testified that of the total unsecured debt, less than 1% is from Full Cup Enterprises, 26% is from Talk of the Town,

---

[2]The Debtors also listed 49 creditors with "unknown" amounts owed to these creditors, making it likely that the Debtors' actual unsecured debt is higher than the $313,222.26 listed.

28% is from Te'Avone, 28% is her personal debt, and Mr. Wasserman's personal debt is 7%. (Trial Tr., 111, Aug. 16, 2005). The scheduled debt comes from different sources, and the Debtors are not necessarily jointly liable for every debt. However, the Debtors jointly wish to discharge over $313,000 of unsecured debt while providing wholly inadequate documentation regarding their books and records.

The Debtors have preserved and produced few records. They did supply the court and the U.S. Trustee with random tidbits of their records, but to the extent of the documents that were provided, it is clear that they are in violation of § 727(a)(3). The disorder and nature of the records produced did not allow for a meaningful reconstruction of the Debtors' financial transactions. Indeed, the documents produced by Debtors did not reconstruct anything with substantial completeness; rather they are snapshots of small parts of the Debtors financial history.

Section 727(a)(3) puts an affirmative duty on the Debtors to produce books and records that accurately document their financial affairs. They should not be granted a discharge because, in this case, their failure to do so was not justifiable. "[C]ourts and creditors should not be required to speculate as to the financial history or condition of the debtor, nor should they be compelled to reconstruct the debtor's affairs." In re Juzwiak, 89 F.3d at 428 (citations omitted).

The Debtors have not offered an explanation which justifies their lack of adequate books and records under the particular circumstances of this case. As to the failure to provide any documentation whatsoever regarding the startup funds and income they received from their businesses, the Debtors' Answer to the Complaint asserted only that all of their financial records were seized and destroyed by different landlords. However, they failed to provide any evidence to corroborate their stories about two previous evictions in which the substantial part of their

10

books and records were supposedly seized and destroyed. Under these circumstances, such explanations do not constitute an appropriate justification for their failure to keep adequate records.

Even if the asserted seizures by landlords were true, the Debtors are not excused from making a good-faith effort to reconstruct those records, which they simply have not done. Accordingly, pursuant to 11 U.S.C. § 727(a)(3) the U.S. Trustee has proven by a preponderance of the evidence that the Debtors have each failed to keep or preserve books and records from which the their financial condition may be ascertained, and the Debtors' discharges are therefore denied on that basis.

## 11 U.S.C. § 727(a)(5)

Section 727(a)(5) provides that a discharge will be granted unless the debtor has failed to satisfactorily explain any loss of assets or deficiency of assets to meet the debtor's liabilities. 11 U.S.C. § 727(a)(5). By penalizing a debtor who is insufficiently forthcoming about what happened to his assets, § 727(a)(5) is one of several Code provisions meant to "relieve [ ] creditors and courts of the full burden of reconstructing the debtor's financial history and condition, placing it instead upon the debtor." In re Olbur, 314 B.R. 732, 740 (Bankr. N.D. Ill. 2004) (quoting In re Hermanson, 273 B.R. 538, 545 (Bankr. N.D. Ill. 2002)).

Under § 727(a)(5), the bankruptcy judge has "broad power to decline to grant a discharge . . . where the debtor does not adequately explain a shortage, loss, or disappearance of assets." In re Olbur, 314 B.R. at 740 (quoting In re D'Agnese, 86 F.3d 732, 734 (7th Cir. 1996)); In re Martin, 698 F.2d at 886.

Proof under § 727(a)(5) comes in two stages.

11

Initially, the objecting party bears the burden of showing that the debtor "at one time owned substantial and identifiable assets that are no longer available to his creditors." In re Olbur, 314 B.R. at 740 (quoting In re Bostrom, 286 B.R. 352, 359 (Bankr. N.D. Ill. 2002) and In re Hermanson, 273 B.R. at 545).

If this showing is made, the burden then falls on the debtor to offer a "satisfactory explanation" for the unavailability of those assets. In re Olbur, 314 B.R. at 740-41 (quoting In re Hermanson, 273 B.R. at 545 and In re Bostrom, 286 B.R. at 364). Whether an explanation is satisfactory or not rests in the discretion of the court. Id. at 741 (citing In re Bostrom, 286 B.R. at 364). "The debtor's account need not be 'far-reaching and comprehensive,' but it must amount to more than a 'vague, indefinite, and uncorroborated hodgepodge of financial transactions.'" Id. (quoting In re Costello, 299 B.R. at 901).

The explanation must meet two criteria in order to be deemed "satisfactory." In re Mantra, 314 B.R. 723, 730 (Bankr. N.D. Ill. 2004) (citing In re Bryson, 187 B.R. 939, 955 (Bankr. N.D. Ill. 1995)). First, it must be supported by documentation. In re Costello, 299 B.R. at 901. Second, this documentation must be sufficient to "eliminate the need for the Court to speculate as to what happened to all the assets." Id. (citing In re Bostrom, 286 B.R. at 364-65); see also In re Hansen, 325 B.R. at 763 (noting the intertwined relationship between the documentation required by § 727(a)(3) and the adequacy of the explanation under § 727(a)(5)). The debtor must explain in good faith "what really happened to the assets in question." In re Olbur, 314 B.R. at 740 (quoting In re Bailey, 145 B.R. 919, 925 (Bankr. N.D. Ill. 1992)).

A debtor "cannot abuse the bankruptcy process by obfuscating the true nature of his affairs and then refusing to provide a credible explanation." In re Mantra, 314 B.R. at 730 (citing

In re Johnson, 98 B.R. at 366). Even though a satisfactory explanation must be convincing about lack of records or assets, the focus of the inquiry is not exclusively on the subjective nature or honesty of the debtor's explanation, but is also on the objective adequacy of such explanation. Id. (citing In re D'Agnese, 86 F.3d at 734-35). A debtor's failure to satisfactorily justify a substantial loss of assets, however, need not be the product of fraudulent intent. In re Mantra, 314 B.R. at 730 (citing In re Gannon, 173 B.R. 313, 317 (Bankr. S.D.N.Y. 1994)).

In this case, the U.S. Trustee has met his burden of showing that the Debtors at one time owned substantial and identifiable assets that are no longer available to their creditors. Specifically, the U.S. Trustee established that the Debtors owned the following identifiable assets:

    a.    A total of $210,000 received from the sale of 42 units of Full Cup Enterprises LLC for $5,000 each;

    b.    A total of $164,000 received in starting Talk of the Town, $114,000 from Bridgeview Bank and $50,000 from an individual investor;

    c.    Gross monthly income averaging $40,000 from Te'Avone and an average monthly profit of about $4,000; and

    d.    Credit card purchases totaling $59,294.74 with no corresponding assets.

The U.S. Trustee has also met his burden of showing that these substantial and identifiable assets are no longer available to the Debtors' creditors. Indeed, the Schedules admit, under penalty of perjury, that the Debtors own no real property and only $6,550 in personal property.

The Debtors failed to meet their burden to offer a satisfactory explanation for the unavailability of the substantial and identifiable assets. The Debtors produced only a small assortment of documentation, none of which explained what happened to the significant assets mentioned above. Although the Debtors stated that the funds were spent on their various businesses, nothing corroborates this explanation. Records were not produced to document how the Debtors' spent the substantial funds they received in starting Full Cup or Talk of the Town. There are no ledgers, no invoices, no receipts, few bank statements, and no tax returns or business computer records showing how a total of at least $374,000 was spent and is no longer available for creditors. The Debtors' vague, indefinite and uncorroborated explanation can only allow the Court to speculate as to what actually happened to the Debtors' assets, speculation which § 727(a)(5) does not allow or require.

Based on the Debtors' testimony, on two completely separate occasions and in two different buildings with two different landlords they were supposedly evicted, and those two different landlords allegedly destroyed all of their documents without their permission. Even the computer back-ups that the Debtors allegedly created were also seized and destroyed on the two different occasions, they say. (Trial Tr., 47, Aug. 16, 2005). No corroborating witnesses or documents were presented. But even if the Debtors were truthful, they failed to reconstruct their records. With the minimum documents provided, it is not possible to trace the money spent without resorting to speculation, and no way to determine where the money was spent.

Regarding Talk of the Town, Mrs. Wasserman testified that to start the business, people were hired to tear down a wall and install flooring. (Trial Tr., 38, Aug. 16, 2005). In addition, Mrs. Wasserman testified that she leased and bought some restaurant equipment. (Trial Tr., 38,

Aug. 16, 2005). While she answered in the affirmative that she specifically knew who she paid to tear down the wall, and lease equipment from, she did not subpoena anyone that testified to that effect. (Trial Tr., 40, Aug. 16, 2005). Despite the fact that Mrs. Wasserman testified that she was aware of the names of certain vendors, knew the bank who held certain funds, and knew the lender of loans used to start the business, no witnesses were subpoenaed or produced to corroborate her testimony.

During closing arguments, the Debtors expressed their dissatisfaction with their former counsel. Mrs. Wasserman stated that their former counsel did not feel the necessity to subpoena people that could testify to receiving money from the Debtors, subpoena the landlords, or obtain copies of the eviction records. (Trial Tr., 40, Aug. 16, 2005). Mr. Wasserman also expressed his disappointment and anger with their former counsel. (Trial Tr., 52, Aug. 16, 2005). It is possible that with the aid of skilled legal help the Debtors might have been able to produce additional records and proof, but one cannot speculate as to what might have been. Furthermore, even if some such records were produced, the Debtors were still unable to trace their expenditures. Despite having extensive business experience, education, and running three businesses and taking in tens of thousands of dollars each month, they have provided only a small assortment of documents covering only select random periods of time that prevent adequate tracing of their assets. Under such conditions, Debtors are not entitled to a discharge.

The Debtors have emphasized the fact that they have not been accused of fraud or intent to deceive. As Mr. Wasserman stated in his closing argument, "And nobody, nobody here has said anything about us committing fraud. Nobody has said that we burned documents; that we threw away documents; that we withheld documents" (Trial Tr., 54-55, Aug. 16, 2005). In this

15

case, there were no allegations by the U.S. Trustee that the Debtors acted with the intent to deceive or committed fraud in connection with their bankruptcy filing. However, the intent to deceive is not a requisite element for denying a discharge under § 727(a)(3) and § 727(a)(5). 11 U.S.C. § 727(a)(3); 11 U.S.C. § 727(a)(5); In re Juzwiak, 89 F.3d at 430 ("Although the ultimate goal of § 727(a)(3) is to distinguish between the honest debtor, who should be granted the privilege of discharge, and the abusive or unworthy debtor, who does not deserve such a benefit (citations omitted) creditors do not need to prove that the debtor intended to defraud them in order to demonstrate a § 727(a)(3) violation.").

## CONCLUSION

Accordingly, pursuant to 11 U.S.C. § 727(a)(3) and 727(a)(5) the U.S. Trustee has proven by a preponderance of evidence that Debtors and each of them have failed to explain loss or deficiency of assets to meet their liabilities and lack of adequate records. The Debtors' discharges must therefore be denied.

Judgment will separately enter denying both Debtors a bankruptcy discharge.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Entered this 28th day of October 2005

## CERTIFICATE OF SERVICE

I, Dorothy Clay certify that on October 28, 2005, I caused to be mailed by United States first class mail copies of the foregoing Findings of Fact and Conclusions of Law to the following:

Cameron M. Gulden, Esq.
Office of the U.S. Trustee
227 West Monroe Street
Suite 3350
Chicago, IL 60606
Counsel for Plaintiff

Jack D. And Lymor K. Wasserman
816 Skokie Boulevard
Townhouse C
Wilmette, IL 60091

Marc D. Sherman, Esq.
Marc D. Sherman & Associates, P.C.
3700 West Devon Avenue
Suite E
Lincolnwood, IL 60712

*Dorothy Clay*
Secretary/Deputy Clerk